APPEAL OF WORKINGMEN'S COOPERATIVE ASSOCIATION OF THE UNITED INSURANCE LEAGUE OF NEW YORK.

Docket Nos. 2476, 4253. Submitted October 10, 1925. Decided April 20, 1926.

A nonfraternal, mutual assessment, life and health insurance association, incorporated under the laws of New York and doing business within the limits of Greater New York, having no capital stock and not organized for profit, is not exempt from taxation by section 231 of the Revenue Act of 1918.

*Henry B. Salisbury, Esq.*, for the taxpayer.
*Ellis W. Manning, Esq.*, for the Commissioner.

Before MARQUETTE, GREEN, and LOVE.

These appeals are from determinations of deficiencies of $1,010.99 and $1,469.40 in income and profits taxes for the years 1918 and 1919, respectively. The question in each appeal is whether the taxpayer is exempt from taxation by section 231 of the Revenue Act of 1918.

### FINDINGS OF FACT.

The taxpayer is a corporation of the State of New York, with its principal office in New York City. It was formed under chapter 175 of the Laws of 1883, entitled, " An act to provide for the incorporation and regulation of cooperative or assessment life and casualty insurance associations and societies," the first section of which reads as follows:

SECTION 1. Any number of persons not less than nine, residents of the state of New York, hereafter desiring to form an organization fraternal or nonfraternal for the purpose of transacting the business of life or casualty insurance, or both life and casualty insurance, upon the cooperative or assessment plan, may associate themselves together, and effect such organization as hereinafter prescribed, and not otherwise.

The certificate of incorporation, which was approved August 24, 1886, contains the following statement of purposes:

That the association proposes to carry on the business of Life and Casualty Insurance upon the co-operative or assessment plan and non-fraternal, * * *.

That the association proposes to carry on the business of Lif and Casualty Insurance upon the basis of weekly assessments graded on the basis of age and amount of Life or Casualty Insurance and on the basis of Special Assessments on its members to meet losses and liabilities whenever the weekly assessments are inadequate for that purpose.

By chapter 353, Laws of 1884, all moneys received or collected by this kind of corporation, derived from admission fees, dues, and

assessments, or any interest or other accretions thereon, and which are to be used for the payment of assessments, or for death losses, or for benefits to disabled members, are exempt from assessment and taxation.

The association is governed by a board of 13 directors who are elected by the members. The board of directors has general control and management of its affairs and funds, and elects an executive board of officers, consisting of a president, vice president, secretary, treasurer, and attorney, which has charge of the business of the association.

It issues certificates of membership or policies under which it insures the lives of members upon the payment of weekly assessments and such special assessments as the directors shall make to meet losses and liabilities whenever the weekly assessments are inadequate to meet them. The weekly assessment for life policies in 1918 ranged from 5 cents to 60 cents per week, and the amount of insurance from $13 to $200. Sick benefit certificates are issued to holders of life policies, under which they are entitled to receive indemnity for loss of time through accident or sickness, upon payment of weekly and special assessments. In 1918 the sick benefit certificates provided for the payment of either $2 or $4 per week.

The association confines its operations to the limits of Greater New York City, but if a member leaves New York City his policy does not thereby become void. There are many members now residing elsewhere to whom policies were issued while they were residents of Greater New York. The membership is composed almost entirely of poorer classes of working people, such as laborers and domestic servants. The number of certificates, both life and health and accident, in force at the end of the year 1918, was 18,124, and the amount of insurance in force was $1,448,867.82.

The association has no capital stock outstanding and is not organized for profit. The weekly salaries of officers in 1918 were:

| | |
|---|---:|
| President | $75 |
| Vice president | |
| Secretary | 40 |
| Treasurer | 45 |

At the close of 1918 the assets were $79,803.52; liabilities, $4,018.26; assessments collected during year, $95,724.57. Among the assets were $3,000 par value of United States Liberty bonds and $75,000 par value of corporate stock of the City of New York of an aggregate book value of $69,749. The deficiencies were arrived at by special assessment under section 328, Revenue Act of 1918.

OPINION.

GREEN : The taxpayer claims exemption from taxation under section 231, Revenue Act of 1918, and contends it may properly be brought within one of the classes of organizations mentioned in the following subdivisions of this section :

(1) Labor, agricultural, or horticultural organizations;

*        *        *        *        *        *        *

(3) Fraternal beneficiary societies, orders, or associations, (a) operating under the lodge system or for the exclusive benefit of the members of a fraternity itself operating under the lodge system, and (b) providing for the payment of life, sick, accident, or other benefits to the members of such society, order, or association or their dependents;

*        *        *        *        *        *        *

(10) Farmers' or other mutual hail, cyclone, or fire insurance companies, mutual ditch or irrigation companies, mutual or cooperative telephone companies, or like organizations of a purely local character, the income of which consists solely of assessments, dues, and fees collected from members for the sole purpose of meeting expenses.

Taxpayer argues it is a labor organization, and thus exempt under subdivision (1). We can not, however, find a basis for this contention. The fact that its membership happens to consist mainly of laborers is not determinative. The only restriction in its constitution is that applicants shall be between the ages of 21 and 60 and " first-class insurance risks in health, habits and moral character." The express purpose is to carry on the business of health and casualty insurance. It is equally clear that it does not come within the terms of subdivision (3). Its certificate of incorporation provides expressly that it shall be nonfraternal.

It is also argued on behalf of the taxpayer that it would come within subdivision (10) as a " like organization " to those there enumerated; that it is like those in that it is mutual. The word " mutual " is an adjective qualifying the kinds of organizations named. The word " like," as here used, means " the same as or of the same character "; it does not mean " similar." Life and health insurance companies or associations are essentially different from the kinds of companies specified in subdivision (10), and we can not impute to Congress an intention to include such associations.

It is a cardinal rule of construction that an exemption from taxation must be expressed in clear and unambiguous terms, and no claim for exemption can be sustained unless within the express letter or necessary scope of the exempting clause.

The subdivision of the Revenue Act of 1924 corresponding to subdivision (10) does name benevolent life insurance associations of a local character and mutual casualty companies, and the report of the

Senate Committee on Finance on the 1924 Revenue Bill states that they were being added.

*The deficiencies are $1,010.99 for the year 1918 and $1,469.40 for the year 1919. Order will be entered accordingly.*